UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CRIMINAL ACTION NO. 1:05CR-49-M

UNITED STATES OF AMERICA                                                                 PLAINTIFF

v.

BRANDON MARCEL CARTER                                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon objections to the Magistrate's recommendation that the motion to suppress evidence by Defendant, Brandon Marcel Carter, be denied. Defendant claims that the evidence was obtained as the result of an illegal stop on August 2, 2005. The matter was before the Magistrate, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), to conduct an evidentiary hearing and issue findings of fact and recommendations concerning the motion to suppress. Following two suppression hearings, the Magistrate recommended that the Court deny Defendant's motion to suppress. Pursuant to 28 U.S.C. §§636(b)(1), Defendant has filed written objections to the Magistrate's findings of fact, conclusions of law, and recommendation.

I. Standard of Review

This Court must now make a de novo determination of the Magistrate's findings and conclusions and accept, reject, or modify them. Id. For the reasons set forth below, the Court rejects the Magistrate's conclusions, but for other reasons, adopts the Magistrate's recommendation that the motion to suppress be denied.

II. Facts

In the late summer of 2005, Bowling Green/Warren County Task Force members were conducting surveillance on a business, Rumble Studios, on Old Louisville Road in Bowling Green,

Kentucky. (DN 40 at pages 3- 4). They were conducting surveillance on the business because they had received information that drugs were being trafficked there. (Id.) At different times during their surveillance, the Task Force members had observed a green Buick with Maryland tags parked in front of the business. (Id.) Although they had never seen the driver and/or passengers in the vehicle, on July 15, 2005, they ran the plate on the vehicle and discovered that its Maryland tags were expired. (DN 40 at page 10; Government's Ex. A). Then, on August 2, 2005, the Task Force members observed two black males leave the business, get into the green Buick, and pull away. (DN 4). At that time, Gary Spillman, a Bowling Green Police Department sergeant who had been assigned to work with the Task Force, contacted the city police on his radio and asked if any officers were in the area towards which the green Buick was traveling. (DN 40 at p. 4-5). When Officer Bill Stephens responded affirmatively, Sergeant Spillman gave him the vehicle description, told him the vehicle was "suspicious," and told him to get a "stop" on the vehicle if he could. (DN 25 at p. 19; DN 40 at p. 5). Subsequently, Officer Bill Stephens passed the vehicle, noticed that it had a cracked windshield, and proceeded to pull the vehicle over for an "equipment violation."[1] (DN 25 at p. 5-6). Officer Stephens then asked the driver for his license and discovered that it was suspended. (DN 25 at p. 6). He placed the driver - now identified as the Defendant, Mr. Brandon Carter- under arrest for the suspended license. (Id.) Officer Stephens then searched the Defendant and found a gun in one pocket and crack cocaine in another. (DN 25 at p. 7).

---

[1] Officers Stephens ultimately issued Mr. Carter a citation for "obstructed vision on windshield" under KRS 189.110. (DN 25 at p. 6).

2

III. Discussion

A. The Magistrate's Conclusions of Law

In concluding that the Defendant's motion to suppress should be denied, the Magistrate held that the stop was justified because, upon considering the totality of the circumstances, the police had a "reasonable suspicion" that the vehicle's occupants had engaged, were engaged, or were about to engage in criminal activity. The Court, however, rejects that conclusion.

The Fourth Amendment protects an individual from unreasonable searches and seizures. Any evidence that stems from an unreasonable search or seizure must be suppressed. Wong Sun v. United States, 371 U.S. 471, 488 (1963). Under Terry v. Ohio, 392 U.S. 1 (1968), an officer without a warrant "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v.Wardlow, 528 U.S. 119, 122 (2000). And while this reasonable suspicion is a less demanding standard than probable cause, it requires "at least a minimum level of objective justification for making the stop...the officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." Id. at 123. Courts must determine from the totality of the circumstances whether law enforcement had an objective and particularized basis for suspecting criminal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273-277 (2002).

Traffic stops are considered seizures within the meaning of the Fourth Amendment. Whren v.United States, 517 U.S. 806, 809-10 (1996). However, a vehicle may be stopped under Terry, if an officer has a reasonable and articulable suspicion that "its occupants had engaged, were engaging, or were about to engage in criminal activity." United States v. Perez, 440 F.3d 363, 370 (6th Cir. 2006).

In its recommendation, the Magistrate followed the reasoning of Perez and held that the Bowling Green Police had "reasonable suspicion" to suspect the occupants in the vehicle of criminal wrongdoing based on the totality of the circumstances. Specifically, the Magistrate held that "reasonable suspicion" existed based upon a consideration of the following factors: members of the Bowling Green Drug Task Force 1) had received information connecting the business to drug activity from more than one informant; 2) had observed the Green Buick with expired Maryland plates parked in front of the business; 3) had been unable to determine the identity of the person operating the vehicle; 4)and, on August 2, 2005, saw two black men emerge from the business and drive off in the green Buick.

The Court, however, does not agree that a consideration of these factors alone would give the officers the "reasonable suspicion" necessary to uphold the legality of the stop under Terry. This case stands in stark contrast to the vehicle stop in Perez. There, the police not only had received information concerning a specific vehicle and drugs, but also had observed the occupants of the vehicle engaging in suspicious activity, such as renting two hotel rooms, but staying in only one; moving duffle bags from one hotel room to their vehicle, but only after circling the hotel; and then, moving the duffle bags from their vehicle to a parked vehicle and leaving them. Perez, 440 F.3d at 366-367.

Instead, this case factually seems more aligned to United States v. Patterson, 340 F.3d 368 (6th Cir. 2003), where the Sixth Circuit held that the police lacked reasonable suspicion to stop and frisk individuals who were congregating at a known drug "hot spot." In that case, the police received an anonymous tip complaining about drug sales on a specific street corner. Id. at 370. Over five and half hours after receiving the tip, two officers arrived at the location and observed eight black males

4

near the corner. Id. The police officers then asked the eight men to put their hands on their cars. Id. The Sixth Circuit held that this stop was unreasonable because it was based on a tip which "merely described drug activity without any details as to the perpetrators." Id. at 371. The court noted that to allow this kind of stop based on a tip alone would "allow officers carte blanche to search every person" within a reported vicinity. Id.

Here, the police had only received information about activity at a specific location, not about a specific vehicle or person. Further, at the time of this vehicle stop, the police had not independently corroborated any of the informants' assertions concerning drug activity at the business. And, significantly, the record gives no indication as to the potential reliability of the police informants. Finally, it is not even clear here that the officers themselves believed they had reasonable suspicion to suspect criminal activity. Officer Stephens testified that he pulled the vehicle over for violating a traffic law related to broken windshields (DN 25, p. 5), and Sergeant Spillman testified that he suggested to Officer Stephens that he pull the vehicle over for expired tags (DN 40, p. 9).[2]

Thus, upon a consideration of the "totality of the circumstances," the Court concludes that the police did not possess the "reasonable suspicion" necessary to justify the stop of Defendant's green Buick on the night of August 2, 2005.

B.  The Traffic Stop

As an alternative to its theory that the traffic stop was justified based on reasonable suspicion of drug activity, the United States claims that the initial stop was lawful based on a traffic violation - the cracked windshield. And, indeed, "a police officer may effect a traffic stop of any motorist for

---

[2] It is worth noting that the tags had been renewed and were not expired on the date of the traffic stop.

any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct." United States v. Townsend, 305 F.3d 537, 541 (6th Cir. 2002) (following Whren v. United States, 517 U.S. 806, 812-813 (1996)). A roadside detention is lawful so long as the officer has probable cause to believe the motorist has violated the traffic laws. United States v. Burton, 334 F.3d 514, 516 (6th Cir. 2003).[3] Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a man of reasonable caution to believe that an offense has been or was occurring. Brinegar v. United States, 328 U.S. 160, 175-176 (1949).

Here, Officers Stephens testified that he pulled the Defendant over because he observed that the vehicle had a cracked windshield. (DN 25 at p. 5-6) Officer Stephens ultimately issued a citation under KRS 189.110 for the cracked windshield, believing that a cracked windshield in itself constitutes an "equipment violation" under Kentucky law. (Id.). Significantly, however, in an opinion issued after the August 2, 2005 traffic stop, a Kentucky court held that cracked windshields do not constitute violations of KRS 189.110. Garcia v. Commonwealth of Kentucky, 185 S.W. 3d 658 (Ky. Ct. App. 2006). It further held that a cracked windshield which "unreasonably impairs the vision of a driver" does constitute a violation of the Kentucky vehicle nuisance statute, KRS 189.020, because such a windshield does not "protect the rights of other traffic" nor does it "promote public safety." Id. at 664.

Here, then, it appears that Officer Stephens was mistaken in his belief that driving with a

---

[3] In the Sixth Circuit, it is unclear whether an officer is required to have probable cause, or mere reasonable suspicion, to believe that a traffic violation has occurred in order to initiate a traffic stop. See Gaddis v. Redford Twp., 364 F.3d 763, 771 (6th Cir. 2004). For example, in United States v. Burton, a panel of the Sixth Circuit held that a roadside detention is lawful so long as the officer has "probable cause" to believe the motorist has violated the traffic laws. 334 F.3d 514, 516 (6th Cir. 2003). However, another panel held a traffic stop was lawful where the police had "reasonable suspicion" of a violation of vehicle registration and window-tinting regulations. Weaver v. Shadoan, 340 F.3d 398, 407-408 (6th Cir. 2004). It is not necessary for the Court to make sense of this conflict because, even under the probable cause standard, the stop was justified.

cracked windshield in Kentucky is unlawful per se. However, the Sixth Circuit has held that "knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed." United States v. Anderson, 923 F.2d 450, 457 (6th Cir. 1991). Further, "just as a subjective belief by the arresting officer would not establish probable cause where none existed, a subjective belief by the arresting officer cannot destroy probable cause where it exists." Id.

The Court credits Officer Stephens' testimony that he observed the crack in the Defendant's windshield. Furthermore, photographs in the record show that the crack extends the length of the bottom portion of the windshield. Based on Officer Stephens' observation of the cracked windshield, a reasonable officer would have probable cause to initiate a traffic stop for a violation of KRS. 189.020. The Defendant's argument that the crack was not large enough to constitute a violation of KRS 189.020 is unavailing. The question presented here is not whether KRS 189.020 was violated, but whether there was probable cause to believe that it was. The Court concludes there was probable cause for the traffic stop.

## IV. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to suppress the evidence obtained as result of the traffic stop on August 2, 2005 is **DENIED**.

cc: Counsel of Record